IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| D'armonde Kethon Demmons, ) | Civil Action No. 6:12-1291-CMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| Ms. Derrick, Ms. Priester, ) | |
| Defendants. ) | |

This matter is before the court on the defendants' and the plaintiff's motions for summary judgment (docs. 29, 35). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On September 13, 2012, the defendants filed a motion for summary judgment (doc. 29). By order filed September 14, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On October 4, 2012, the plaintiff filed a response in opposition, and the defendants filed a reply on October 10, 2012. On January 14, 2013, the plaintiff filed a motion for summary judgment (doc. 35). The defendants filed a response in opposition on January 24, 2013.

**FACTS PRESENTED**

The plaintiff alleges claims for negligence and deliberate indifference to serious medical needs in violation of his Eighth Amendment rights. The defendants are employees of the South Carolina Department of Corrections ("SCDC"). Defendant Derrick

is a registered nurse and serves as Health Care Authority for Allendale Correctional Institution ("ACI"), and defendant Priester is the Food Service Supervisor at ACI.

The allegations in the plaintiff's complaint arise from the removal of two of the plaintiff's wisdom teeth at an outside medical facility (doc. 29-5 at p. 2, encounters 39-43). According to the plaintiff's SCDC medical records, he reported to the ACI medical office on May 8, 2012, after his oral surgery. The medical records show that the plaintiff returned from the outside medical facility with orders for Amoxicillin (500 mg) and Motrin (600 mg). Dr. Thomas E. Byrne gave the plaintiff instructions on taking his medications and gave him gauze for bleeding and ordered the medication. Dr. Byrne also ordered a soft diet for the plaintiff (*id.* at p. 2, encounter 44; doc. 29-2, Byrne aff. at p. 1). The pharmaceutical register shows that the plaintiff was provided with Amoxicillin and Motrin on that same date (doc. 29-5 at pp. 5-6). Nurse Derrick also submitted an affidavit testifying that the plaintiff approached her on May 8th asking for extra gauze. According to Nurse Derrick, the plaintiff was not in acute distress when she saw him (doc. 29-3, Derrick aff. at pp. 1-2). The plaintiff reported to medical on May 10, 2012, complaining of not being able to eat since his surgery. The plaintiff was informed that he needed to drink liquids, and it was noted that the plaintiff had an order for a soft diet. The plaintiff became angry and "acting out." The plaintiff was given an Order to Report for the next day for a recheck with the dentist. The plaintiff did not show up for the recheck (doc. 29-5 at p. 1, encounter 45; doc. 29-2, Byrne aff. at p. 1). On May 13, 2012, the plaintiff returned to medical complaining that his stitches came out the night before. No swelling or bleeding was noted. The plaintiff was told to drink plenty of liquids until he was seen by the doctor. On May 14, 2012, the plaintiff was seen by Dr. Byrne. At that time, he complained about his post-operative care. There was no swelling, bleeding, or other problems with his wounds. The plaintiff was given Motrin (400 mg). Dr. Byrne noted that the plaintiff had no explanation for failing to report for a recheck with the dentist on May 11, 2012. The plaintiff did not return to medical for treatment after May 14th (doc. 29-5 at p. 1, encounters 46-48; doc. 29-2, Byrne aff. at pp. 1-2).

The plaintiff also claims that Ms. Priester refused to feed him and that when she did, she gave him chicken grease. Ms. Priester testified that on the day of the incident in question, the plaintiff came through the line and asked for a liquid diet. She claims the plaintiff addressed her with curse words and abusive language. Ms. Priester states that she told the plaintiff that she needed his inmate identification card or number so that she could confirm any special diet order from medical. The plaintiff refused to give her the information, and he became more abusive and angry. Ms. Priester testified that she told the plaintiff she could not take his word for it, and she would need to have confirmation. However, he still refused to provide his identification. Ms. Priester testified that the plaintiff was nonetheless served chicken broth, which she testified would satisfy an order for a liquid diet under ACI policy (doc. 29-4, Priester aff. at p. 2).

The plaintiff filed a Step 1 grievance with ACI on May 14, 2012, complaining about his post-operative medical care from Ms. Derrick and that he had not received a soft diet for two days (doc. 32-1 at p. 1). The Warden denied the grievance on June 4, 2012 (*id.* at p. 2). The Warden's response instructed the plaintiff that if he was not satisfied with the decision, he could appeal within five days of receipt of the decision (*id.*). On June 6, 2012, the plaintiff check marked the box stating, "I accept the Warden's decision and consider the matter closed" (*id.*). He did not file a Step 2 appeal. On June 7, 2012, the plaintiff filed a Request to Staff Member accusing the Warden of taking the side of Ms. Derrick without appropriately investigating his prior grievance. The Warden responded on June 12, 2012, informing the plaintiff that if he was not satisfied with the response to his Step 1 grievance, he should have filed a Step 2 appeal. As he did not do so, the Warden considered the matter closed (*id.* at p. 3).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is

3

deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The defendants first[1] argue that the plaintiff failed to exhaust his administrative remedies and therefore the case should be dismissed. This court agrees. In his response in opposition to the motion for summary judgment, the plaintiff states, "I have grievanced Ms. Derrick and the court has this evidence but I did not grievance Ms. Priester because

---

[1] As this court finds that the case should be dismissed without prejudice for failure to exhaust administrative remedies, the defendants' remaining arguments in support of summary judgment will not be addressed.

4

the process of that grievance system and the time of my suffering conflict one another, being the amount of time that can be taken to receive a response" (doc. 32 at p. 7). In his own motion for summary judgment, the plaintiff states that he "did attempt several avenues of administrative remedies informally and was treated with disregard and vindictiveness, the grievance process for all issues were applicable, within the time frame of the events, the process of the effects of events and the response time permitted to address events which would exceed the injury" (doc. 35 at pp. 1-2).

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").  "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681.

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id.* at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

In *Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008), the Fourth Circuit explained that "[u]nder the [PLRA], prisoners must exhaust 'such administrative remedies as are available' *prior to filing suit in federal court* challenging prison conditions." 517 F.3d at 725 (emphasis added) (quoting 42 U.S.C. § 1997e(a)).  The reason that the administrative remedies must be exhausted prior to the filing of a civil action, as opposed to after or contemporaneous therewith, was explained by the Supreme Court in *Porter*, in which the Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

534 U.S. at 524–25.  Moreover, a prisoner may not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. *Cambron v. Harris*, C.A. No. 3:11-326-RMG-JRM, 2012 WL 1579580, at *3 (D.S.C. April 11, 2012), *Report and Recommendation adopted by* 2012 WL 1579497 (D.S.C. May 4, 2012).

As noted in *Jones v. Kay*, the time limits of the SCDC grievance policy are summarized as follows:

> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
>
> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;

6

> > (3) the Warden should respond to the grievant in writing within forty (40) days;
> >
> > (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
> >
> > (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.
>
> *See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

No. 07-3480-SB, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007).

The plaintiff filed a Step 1 grievance, to which the Warden timely responded. The plaintiff later filed a Request to Staff Member, and the Warden again timely responded. It is undisputed that the plaintiff did not file a Step 2 appeal of the denial of his Step 1 grievance. While the plaintiff claims that "the process of that grievance system and the time of my suffering conflict one another, being the amount of time that can be taken to receive a response" (doc. 32 at p.7), the PLRA demands exhaustion even if the prisoner believes that exhaustion is futile. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Administrative remedies become "unavailable" if prison employees do not respond to a properly filed grievance or if they otherwise act to prevent a prisoner from exhausting his administrative remedies. *Moore v. Bennett*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, a court may excuse a prisoner's failure to exhaust an administrative remedy if a prisoner "through no fault of his own, was prevented from availing himself of" the remedy. *Id*. Here, the plaintiff clearly had an opportunity to file a Step 2 appeal, and he chose not to do so. The plaintiff has failed to allege or present any evidence that he was prevented, through no fault of his own, from

7

pursuing the administrative remedy process. Accordingly, as he has failed to exhaust his administrative remedies, the plaintiff's claims should be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 29) be granted and the plaintiff's complaint be dismissed without prejudice for failure to exhaust administrative remedies.

IT IS FURTHER RECOMMENDED that the plaintiff's motion for summary judgment (doc. 35) be denied.

s/ Kevin F. McDonald
United States Magistrate Judge

February 27, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).